James W. GARNER, Respondent,

v.

Susan E. HUBBS, Appellant.

No. 22837.

Missouri Court of Appeals,
Southern District,
Division Two.

May 31, 2000.

---

Charles T. Rouse, Salem, for Appellant.

Respondent's attorney: No brief filed.

ROBERT S. BARNEY, Judge.

Appellant, Susan E. Hubbs, ("Wife") appeals from the judgment entered by the Circuit Court of Dent County denying her motion for contempt, and for other relief including attorney fees, against her former husband, James W. Garner ("Husband"). In her motion, Wife prayed for the court to "apply such sanctions and enter such orders as the court sees fit." Among other forms of relief, Wife sought the "execution of other documents as the court deems just" relative to the enforcement of Articles II and III of a property settlement agreement incorporated in a Decree of Divorce entered by the Superior Court for the State of Alaska, Third Judicial District at Anchorage.[1] Wife's appeal followed.

According to the property settlement agreement incorporated in the decree of divorce, "[t]he parties were married at Fortville, Indiana, on or about October 30, 1965, and were remarried at Anchorage, Alaska, on June 20, 1986."[2] Wife has lived in Salem, Missouri, since before the divorce. At the time of the divorce, Husband lived in Anchorage, Alaska. As best we can discern, Husband retired from military service December 1, 1995, and subsequently moved his residence to Phelps County, Missouri, at an unspecified date. The record reveals that he began employment with the Rolla Police Department in January of 1997.

Wife's pleadings primarily centered around the provisions of Article III of the Agreement, relating to the division of Husband's "Military Retired Pay." The applicable passages from Article III are listed below for ease of reference.

C. This agreement and any implementing order shall be interpreted in light of the Uniformed Services Former Spouses' Protection Act ... codified at 10 U.S.C. § 1408, as amended, and is subject to modification should it become necessary to conform this agreement to the requirements of the Act or the implementing regulation.

. . . .

E. [Wife] is entitled to 25 percent of [Husband's] gross military retired pay plus the same proportionate share of any cost of living or other increases, as her property interest in [Husband's] military retired pay. The term "gross retired pay" for the purposes of this agreement means the total monthly retired or retainer pay to which [Husband] is entitled absent deductions set forth at 10 U.S.C. § 1408(A)(4). [Husband] agrees to apply for military retired pay at the earliest possible opportunity.

---

1. Appellant filed her "Petition for Registration of Foreign Judgment" in the Dent County Circuit Court on November 4, 1997.

2. No explanation is found in the record before us relative to whether the parties previously dissolved their 1965 marriage.

F. Because of the provisions of the Act, the servicing finance center ... will only pay to [Wife] a portion of [Husband's] "disposable retired pay" as defined in the Act. There will, therefore, be a deficiency in each payment from the Center in the amount of the difference between her percentage share of [Husband's] pay stated in paragraph "E" above and the percentage of his "disposable retired pay."

G. Therefore, on a quarterly basis, the parties shall reconcile the differences between that which should have been received by [Wife] and that which was actually paid by the servicing finance center. This reconciliation is necessary because the Center will base [Wife's] payments on a percentage of [Husband's] "disposable retired pay" as defined in the Act. Such reconciliation shall be on or before March 31, June 30, September 30 and December 21 of each year. The parties shall exchange information on the amount due and any such difference will be paid within 15 days of the quarterly reconciliation.

H. [Husband] is appointed as trustee for the benefit of [Wife] to the extent of her interest in the portion of his military retired pay hereby awarded to her. [Husband] will pay to [Wife] her said interest no later than 5 days after he receives payment from the Center. This paragraph shall be applicable until a direct payment takes effect so that [Wife] will receive her payment directly from the Center and shall be effective for any month for which [Wife] does not receive direct payments from said Center.

I. [Husband] will, under penalty of contempt, pay [Wife] her interest in his retired pay as herein provided. [Husband] is not relieved of this obligation except to the extent that he is notified that the interest of [Wife] has be paid directly to her by the servicing finance center.

J. [Husband] will be personally liable for any costs, including attorney's fees, that may be incurred by [Wife] in enforcing her rights or collecting such benefits from [Husband].

K. [Husband] shall provide to [Wife] a legible copy of any retiree pay account statement and Form W2P he receives within 5 days of receipt of said statement.

L. [Husband] will execute a statement directed to the personnel sections of his service authorizing said offices to release to [Wife] his current home address and any pay information [Wife] requests.

. . . .

N. Payments of [Husband's] retired pay will terminate upon his death, and therefore, payments to [Wife] of her share will also terminate. However, the government has established the Survivor Benefit Plan (SBP) by which payments to a stated beneficiary of a portion of [Husband's] retired pay will continue after his death. Applicable statutes allow a former spouse to be designated a beneficiary under the SBP, and as a just and equitable division of [Husband's] military retired pay, [Husband] should elect coverage under the plan in such an amount as to provide [Wife] 25% of his gross military retired pay, and [Wife] should be designated as [Husband's] "former spouse" beneficiary under the SBP.

O. At the earliest possible opportunity, [Husband] shall elect to participate in the SBP for the said 25% coverage and name [Wife] as his proper "former spouse" beneficiary by promptly executing any and all documents necessary to effect said election. [Husband] shall promptly provide [Wife] a copy of said documents evidencing his election.

P. Should [Husband] fail to make a timely election of SBP, he will provide a commercial annuity that will provide the same.

. . . .

Among the allegations in her pleadings, Wife complained that Husband failed to comply with paragraphs G, H, K, L, O, and P of Article III, of the agreement and that Husband was in contempt for "not complying voluntarily with any of the provisions of paragraph[s] E through P of Article III of said settlement...."

As best we can discern from the record, two hearings were held in this matter and the cause was continued numerous times in a fruitless effort to reach a settlement.[3] The trial court filed its Findings and Judgment on January 22, 1999.

In its judgment denying Wife's requested relief, the trial court determined that:

[t]he aforesaid Judgment required [Husband] to make an election for a survivor annuity for the benefit of [Wife] in connection with his military retirement. [Husband] has complied with the court's orders in this regard by making such an election. A dispute exists between the parties preventing them from making a full accounting between themselves concerning interpretation of the Judgement, to-wit: whether [Husband] or [Wife] is required under the Judgment to pay the premium necessary for implementation of the survivor benefit plan inuring to the benefit of [Wife]. The court finds that the Judgment contains no language concerning which party is responsible for the payment of this premium which, as of this date, amounts to $30.45 per month.

Additionally, the trial court found that the Alaska court's "Judgment of Dissolution of Marriage" was "ambiguous concerning who is responsible for payment of the survivor benefit plan premium...." Furthermore, while the trial court's judgment found that Husband had been represented by counsel during the divorce proceedings,

it noted that the Judgment had been drafted "by an attorney who was then representing the interests of [Wife]." The court then construed the agreement against Wife and in favor of Husband; ordered that she "pay whatever premium is from time-to-time charged as a consequence of the survivor benefit plan election previously made by [Husband] ..."; ordered each party to pay his or her own attorney's fees; and taxed costs against Husband.

Wife appeals contending five points of trial court error.[4] Wife's first three points all relate to trial court error arising from the trial court's interpretation of Husband's obligations under the provisions of Article III. Wife's fourth point reiterates all of the major contentions from her motion, inclusive of Husband's failure to comply with certain procedural requirements set out in the agreement together with Husband's failure to pay Wife certain retirement funds prior to Wife having received direct payments from the United States Government. In her fifth and final point, Wife complains of trial court error in not awarding her attorney's fees. We affirm in part and reverse and remand in part, with directions.

*Discussion and Decision.*

In reviewing the judgment of a court-tried case, this Court views the evidence and permissible inferences drawn therefrom in a light most favorable to the judgment. *See* Rule 84.13(d), Missouri Court Rules (2000). The judgment will be affirmed unless it is against the weight of the evidence, there is insufficient evidence to support it, or it erroneously declares or applies the law. *Creech v. Creech,* 992 S.W.2d 226, 229 (Mo.App.1999).

---

**3.** It appears from the record that the only hearings held were those that occurred on August 25, 1998, and September 29, 1998.

**4.** Husband has not filed an appellate brief with this Court. "Although there is no penal-

ty for the failure to file a brief, that leaves this court to decide the case without the benefit of [his] contentions and authorities." *In re Marriage of Daneshfar,* 953 S.W.2d 95, 97 n. 1 (Mo.App.1997).

*Points I, II, III.*

Wife maintains in her first three points that: (a) there was insufficient evidence supporting the trial court's findings that Husband had made a timely SBP election naming Wife as beneficiary in an amount equal to 25% of Husband's "gross military pay"; (b) that the trial court erred in declaring that the Alaska judgment failed to "establish who is to pay for the premium on the [SBP]"; and (c) that the trial court erred in its determination that the parties' agreement was ambiguous, thereby construing the agreement against Wife and determining that Wife was responsible for the payment of premiums on the SBP. These points are inter-connected and will be reviewed out of order for the sake of clarity.

■ Wife contends that the trial court erred in determining that the separation agreement was "ambiguous" on the issue of who was to pay the premium associated with the SBP election.[5] As previously noted, the trial court construed this provision relating to premium payments against Wife because the agreement was drafted "by an attorney who was then representing the interests of [Wife]."[6] Whether the terms of a separation agreement are ambiguous is a question of law. *Frager v. Frager*, 949 S.W.2d 173, 176 (Mo.App. 1997); *State ex rel. Mo. Dam*, 950 S.W.2d at 929. "A contract is ambiguous only if its terms are susceptible of more than one meaning so that reasonable persons may fairly and honestly differ in their construction of the terms." *Frager*, 949 S.W.2d at 176.

The mere fact that the parties disagree on the interpretation of a contract does not render the document itself ambiguous. The test is whether the disputed language, in the context of the entire agreement, is reasonably susceptible to more than one construction giving the words their plain and ordinary meaning as understood by a reasonable person.... Furthermore, an interpretation of a contract or agreement which involves unreasonable results, when a probable or reasonable construction can be adopted, will be rejected.

*State ex rel. Mo. Dam*, 950 S.W.2d at 929 (quoting *St. Louis Police Officers' Ass'n v. Board of Police Comm'rs*, 846 S.W.2d 732, 740 (Mo.App.1992)).

■ Under Article III, paragraph O of the separation agreement, Husband was to "elect *to participate* in the SBP for the said 25% coverage and name [Wife] as his proper 'former spouse' beneficiary by promptly executing any and all documents necessary to effect said election." (Emphasis added). Husband would have us construe this portion of the agreement to mean that his only obligation was to fill out the paperwork for the SBP election. Such a construction ignores the provision that Husband was required to provide a commercial annuity if he failed "to make a timely election of SBP." The most reasonable interpretation of this portion of the agreement is that the parties intended for Husband to provide Wife an annuity of some sort, whether through the military retirement system or by a commercial annuity. Accordingly, Husband is required to make premium payments to implement

5. Husband's Exhibit A shows that from January 1996 through August 1998 premiums have been taken from his gross pay in varying amounts from $29.82 to $30.45 and total $959.28.

6. In its judgment, the trial court cited to *Graue v. Missouri Property Ins. Placement Facility*, 847 S.W.2d 779, 785 (Mo. banc 1993), for the proposition that "[w]here a contract is fairly open to two or more interpretations, that construction will be adopted which is against the one who prepared the contract."

*Id.* We observe that in *Graue*, the court construed an ambiguous insurance contract against an insurance carrier. The instant matter, however, involves a separation agreement. Even if the separation agreement was primarily drafted by Wife's attorney, the record shows that Husband was represented by counsel during the Alaska divorce proceedings. It is reasonable to infer that Husband participated in any negotiations involving the language of the separation agreement.

the provisions of Article III, paragraph O of the separation agreement. The trial court erred as a matter of law in finding the separation agreement "ambiguous concerning who is responsible for payment of the survivor benefit plan premium...."

▋ Additionally, we observe that Husband's Exhibit C was offered and admitted into evidence. As best we can glean from its review and Husband's testimony, the third and fourth pages of the exhibit appear to be a federal government form.[7] On page 4 of the form, is found the heading "Section VII—Survivor Benefit Plan (SBP) Election." This section contains three sub-sections, namely: number 28, "Beneficiary Category," in which we find an "X" placed next to the words "I elect coverage for the person named in Item 30 who is my former spouse"; number 29, "Level of Coverage," which also has an "X" placed next to the words "I elect coverage with a reduced base amount of $598.00"; and sub-section 30, "Name of Insurable Interest or Former Spouse Beneficiary," where we find Wife's name. Wife's address is listed as "Unknown, Salem MO." The form is signed by Husband and dated "3 Nov 95." The form is also signed by a witness, "William H. Fuller," whose address is listed as "Transition Assistance Office, Ft. Richardson AK." At the hearing, Husband testified that at the time of his retirement he filled out "a form for the SBP program...." Husband further testified that he gave the federal government a copy of the Alaska divorce decree and that the federal government allowed him to apply for the SBP.

In our review, although we find that husband made an SBP election in Wife's name, we are not convinced that Husband made the requisite election to provide survivor benefits *equal to 25% of his gross military retirement pay* to Wife. Exhibit C reflects that Husband elected "coverage with a reduced base amount of $598." In

his testimony, Husband never explained the significance of making such an election in sub-section 29. He only testified that he applied for the SBP and that he knew that Wife was entitled to a SBP equal to 25% of his gross military retirement pay. There is no way to discern from the form that this election will result in Wife receiving the required 25% of Husband's gross military retirement pay after his death. Furthermore, Husband failed to comply with the requirement of Article III, paragraph O that Husband provide Wife a copy of the documents "necessary to effect said election," nor was there sufficient testimony presented to support such an inference. Points I, II and III are sustained.

Accordingly, the matter is remanded to the trial court to take further evidence from the parties, as needed, to clarify and make a specific determination as to the Survivor Benefit Plan, consistent with this opinion. Additionally, the trial court is directed to require Husband, at his own expense, within the next 90 days, or as reasonably soon thereafter as possible, to provide Wife with independent proof from United States Government sources of: (a) Husband's gross military retirement pay, without deductions set forth in 10 U.S.C.A. § 1408(a)(4)(1998), covering that period of time from Husband's retirement from military service to the time of the hearing specified above; and (b) documents showing that Husband has elected to participate in an SBP, as required by paragraphs O and P of Article III of the separation agreement. Furthermore, in compliance with paragraphs L, and N through P, of Article III of the separation agreement, the trial court is directed to require Husband to execute and give to Wife a document authorizing the appropriate United States Government entity to release to Wife any financial information relating to Husband's military retirement benefits as she requests, inclusive of periodic retire-

---

**7.** The only identifying markings found on the form are the designation "DD Form 2656, Jun 93" printed at the bottom left hand corner of the pages.

ment pay and survivor's benefit allowance information, as applicable.

## Point IV.

In Wife's fourth point, she reiterates in sub-points A through F many of the complaints contained in previously reviewed points. She also argues that under Article III of the separation agreement Husband acted contumaciously by failing to: (1) quarterly reconcile differences in his "gross retirement pay" and "disposable retirement pay;" (2) provide current address and pay information; (3) provide legible copies of retiree pay accountant statements and form W2P; (4) make a timely election of a survivor's benefit plan for the benefit of Wife; (5) voluntarily provide information as set out in paragraphs E through P of Article III; and (6) pay Wife 25% of his gross pay as per the agreement, during that period of time prior to Wife receiving direct retirement payments, in violation of paragraph H of Article III. We find this point has no merit.

In our review of civil contempt proceedings, "the trial court's judgment will not be disturbed on appeal absent a clear abuse of discretion." *Gerau v. Gerau*, 927 S.W.2d 441, 443 (Mo.App.1996). "The judgment must be sustained unless there is no substantial evidence to support it, it is against the weight of evidence, or it erroneously applies or declares the law." *Id.* "Civil contempt is intended to benefit a party for whom an order, judgment or decree was entered. Its purpose is to coerce compliance with the relief granted." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc 1994). "A prima facie case for civil contempt is established when the party alleging contempt proves: 1) the contemnor's obligation to pay a specific amount or perform an action as required by the decree; and 2) the contemnor's failure to meet the obligation." *State ex rel. Missouri Dam and Reservoir Safety Council v. Rocky Ridge Ranch Property Owners Ass'n*, 950 S.W.2d 925, 928 (Mo.App.1997). "When a prima

facie case is established, the contemnor then bears the burden of proving his or her inability to make payments or perform an action and that noncompliance was not an act of contumacy." *Id.*

We must defer to the trial court on questions of credibility of the witnesses. *Warren v. Tom*, 946 S.W.2d 754, 757 (Mo.App.1997). The "trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." *Crawford v. Detring*, 965 S.W.2d 188, 189 (Mo.App.1998). Furthermore, "[c]ontempt is a 'drastic remedy which should be carefully and cautiously exercised.'" *Gerau*, 927 S.W.2d at 443 (quoting *State ex rel. Stanhope*, 533 S.W.2d at 575). "Although many trial courts would have found husband guilty of contempt, we cannot say the trial court erred as a matter of law and that it did not have discretion to deny [that portion of] the motion." *Id.* Point denied.

## Point V.

In her fifth point, Wife claims the trial court erred in failing to award her attorney fees. We agree.

Missouri courts have historically adhered to the 'American rule' that, with certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits.

*McCreary v. McCreary*, 954 S.W.2d 433, 452 (Mo.App.1997). Attorney fee provisions in separation agreements fit under the "contract" exception to the "American rule." *See Id.* Paragraph J, of Article III, of the separation agreement at issue provides that "[H]usband will be personally liable for any costs, including attorney's fees, that may be incurred by [Wife] in enforcing her rights or collecting such ben-

efits from [Husband]." While, "[i]n most circumstances, the trial court is granted broad discretion to award attorney's fees ... if a claim for attorney's fees is made under a provision of the contract, the trial court must comply with the terms set forth therein." *Jackson v. Christian Salvesen Holdings, Inc.*, 978 S.W.2d 377, 385 (Mo. App.1998) (citation omitted). Wife has shown a legitimate claim for her attorney fees in accordance with the separation agreement's provisions. Wife's fifth and final point is meritorious and is sustained.

The judgment of the trial court is affirmed in part; reversed and remanded in part in accordance with the directions of this Court. Further, under our power to "give such judgment as the court ought to give," Rule 84.14; *Brewer v. Trimble*, 926 S.W.2d 686, 689 (Mo.App.1996), we award Appellant $1,200.00 for her attorney's fees. Judgment is entered against Respondent, James W. Garner, in the amount of $1,200.00.

GARRISON, C.J., concurs.

MONTGOMERY, P.J., concurs.