In re the MARRIAGE OF Beverly Lea EARLS and James David Earls.

Beverly Lea Earls, Petitioner–
Respondent,

v.

James David Earls, Respondent–
Appellant.

No. 24579.

Missouri Court of Appeals,
Southern District,
Division Two.

June 26, 2002.

Gary W. Lynch, K. Patrick Douglas, Douglas, Lynch, Haun & Kirksey, P.C., Bolivar, for Appellant.

Ralph W. Gilchrist, Bolivar, for Respondent.

PHILLIP R. GARRISON, Presiding Judge.

This is an appeal from a judgment dismissing an application filed by James David Earls ("Father") to hold Beverly Lea Earls ("Mother") in contempt of court for enrolling their son, J.C.E. ("J.C.E."), in the Marshfield, Missouri public schools without Father's consent.

The decree dissolving the marriage of Father and Mother, entered in 1997, provided that the parties would have joint legal custody of J.C.E., with Mother to have primary physical custody subject to Father's specified visitation privileges. When that decree was entered, J.C.E. was then seven years old and attending school in Fair Grove, Missouri. Three years later, Father received a letter from Mother informing him that she had enrolled J.C.E. in the public schools of Marshfield, Missouri even though both Mother and Father continued to live in the Fair Grove School District.

Father filed an application for an order to show cause why Mother should not be held in contempt of court on January 30, 2001 ("First Application"). At the hearing on that application, Father testified that prior to receiving the letter from Mother, he had had no communication with her concerning changing school districts and had not consented to that change. Mother, however, testified that she had discussed the matter with Father before changing school districts, but that he said that he did not want it changed. She said that she attempted to talk with him on two other occasions, but Father would not discuss it with her. Mother, who teaches in the Marshfield school system explained her reasons for changing J.C.E.'s school district: he would have a better opportunity in the Marshfield district because it was a larger district and "a larger conference"; because she teaches in the Marshfield dis-

trict, her and J.C.E.'s school schedules would be compatible; J.C.E.'s sister would be enrolled in Marshfield's preschool program; J.C.E. could go to school with Mother; Mother's classroom is three doors down from J.C.E.'s; she was able to select his teacher at Marshfield; and she could attend his music and art classes with him. The trial court entered a judgment on the First Application finding that Mother had failed to abide by the provisions of the dissolution decree by unilaterally making a decision to change J.C.E.'s school district, but that such action did not constitute contempt of the trial court's custody order. Neither side appealed that decision.

In August 2001, Father's attorney wrote Mother's attorney saying that in the judgment entered on the First Application, the trial court concluded that Mother's action in enrolling J.C.E. in the Marshfield School District was in violation of the dissolution decree, and that if she enrolled him in the Marshfield School District for the upcoming school year, Father would consider that a knowing and willful violation of the dissolution decree.

Mother did enroll J.C.E. in the Marshfield School District for the 2001–2002 school year, and Father filed another application for an order to show cause why Mother should not be held in contempt ("Second Application"). When the Second Application was heard in October 2001, Father testified that he had not consented to J.C.E. being enrolled in the Marshfield School District. There was also evidence, however, that in May 2001 the parties, with their respective attorneys and a court appointed guardian ad litem,[1] met concerning where J.C.E. should attend school, but were unable to agree on the subject.

Mother moved for a dismissal of the Second Application at the close of Father's case. In sustaining the motion to dismiss, the trial court announced that a finding of contempt is not appropriate except for direct violations of the court's decree, and that in this case, the joint custody statute requires only that the parties confer; that if the statute required that the parties agree on decisions concerning children no decisions could be made; and that since the parties had conferred concerning the subject, he was going to sustain the motion to dismiss. Father appeals from the judgment entering that dismissal.

■ Actions for contempt brought to compel a parent's obedience to a court order that benefited the other parent are for civil contempt. *A.G. v. R.M.D.*, 730 S.W.2d 543, 545 (Mo. banc 1987). A prima facie case for civil contempt is established when the party alleging contempt proves: (1) the contemnor's obligation to pay a specific amount or perform an action as required by the decree; and (2) the contemnor's failure to meet the obligation. *Garner v. Hubbs*, 17 S.W.3d 922, 929 (Mo. App. S.D.2000).

■ A court has a duty to protect the integrity of its orders, but whether noncompliance shall be punished as contempt lies within the discretion of the court, and its determination becomes final in the absence of a plain abuse of that discretion. *In re Blankenship*, 553 S.W.2d 307, 309 (Mo.App.1977). (The trial court's judgment in civil contempt action will not be disturbed on appeal absent a clear abuse of discretion. *Garner v. Hubbs*, 17 S.W.3d at 929.) Contempt is a drastic remedy, which should be carefully and cautiously exercised. *Id.*

1. No explanation appears in the record concerning the appointment of a guardian ad litem.

The issue on this appeal relates to the interpretation of Section 452.375.1(2).[2] That statute provides:

"Joint legal custody" means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority.

Father contends that the trial court erroneously declared and applied the law by not applying the requirement of the statute that the parties with joint legal custody must "share" in decisions related to educational issues. He argues that under the statute, the parties must "share the decision-making rights," and in doing so must "confer." His interpretation of "share" is that they must agree, and he contends that merely "conferring" is insufficient. Consequently, Father argues that he made a prima facie case of contempt by showing that after he and Mother conferred about this educational decision, she unilaterally made the decision to enroll J.C.E. in the Marshfield school system.

In support, Father cites *Leone v. Leone*, 917 S.W.2d 608 (Mo.App. W.D. 1996), in which the father contended that the trial court erred in awarding sole legal custody to the mother and in finding that joint legal custody was inappropriate. In affirming the trial court's decision, the appellate court noted the substantial evidence that the parties were unable to cooperate and communicate concerning the welfare of their children, including their disagreement about where to send their children to school. *Id.* at 614. The court said the following concerning joint legal custody:

Under joint legal custody, the parents share the decision-making regarding the health, education and welfare of the children. An important factor for the trial court to consider when determining legal custody is the parties' ability to cooperate and function as a parental unit. Joint custody is "not likely to be in the child's best interest if the parents cannot agree to agree." (Citations omitted.)

*Id.* Continuing, the court said:

Joint legal custody is appropriate only where parents demonstrate the willingness and ability to share the rights and responsibilities of raising their children. Where the parties are unable to communicate or cooperate and cannot make shared decisions regarding the welfare of their children, joint custody is improper. (Citations omitted.)

*Id.*

Father also cites *In re Marriage of Haynes*, 913 S.W.2d 73 (Mo.App. E.D. 1995), where the trial court modified a dissolution decree by terminating joint legal custody and awarding sole legal custody to the mother upon a finding that the parents had been unable to agree on major issues concerning the children. In affirming that decision, the appellate court noted that the public policy is that custody arrangements are based on the best interests of the children. *Id.* at 74. It said, however, that "[a] commonality of beliefs concerning parental decisions and the parties' ability to cooperate and function as a parental unit are important considerations when determining the best interest of the child." *Id.* at 75. In concluding that the trial court had not erred in terminating the joint custody arrangement, the court noted that Father's unilateral decisions concerning surgery for the child, his refusal to agree that his son wear a hearing aid, and his unwillingness to discuss recommended orthodontic care confirmed an "inability to agree on decisions regarding their son." *Id.*

**2.** All references to statutes are to RSMo 2000, unless otherwise indicated.

Both of these cases demonstrate that evidence of an inability to cooperate and agree on important decisions in raising a child can lead to the conclusion that joint legal custody is inappropriate in the first instance, or should be eliminated in a modification proceeding. We are unable to translate those principles, however, into the conclusion espoused by Father that where joint legal custody is granted without the allocation or apportionment of authority on specific issues, the unwillingness to agree necessarily should result in a finding of contempt if one parent makes a decision contrary to the wishes of the other parent. There may be circumstances under which that should be the result, but we are unable to make that fact alone a bright line test.

Section 452.375.2 provides that "[j]oint legal custody" means that the parents share the decision-making rights, and shall confer with each other in the exercise of those rights. It thus mandates that the parents confer in exercising the sharing of decision-making rights. With regard to the First Application, the evidence was conflicting about whether the parties had conferred before the change of school enrollment. Concerning the Second Application, however, both parties admit that there was a conference concerning where J.C.E. should attend school, but there was obviously an inability to agree. This preceded Mother's decision to enroll J.C.E. in the Marshfield schools for the next school year. Under these facts we do not find a clear abuse of discretion. Accordingly, the judgment of the trial court is affirmed.

PREWITT, J., and RAHMEYER, J., concur.