**Joe Dean HADLEY, d/b/a Hadley Builders, Plaintiff–Appellant/Cross–Respondent,**

v.

**Shawn BURTON and De'Ann Burton, Defendants–Respondents/ Cross–Appellants.**

Nos. 28405, 28420.

Missouri Court of Appeals, Southern District, Division One.

Sept. 30, 2008.

Kevin M. Fitzgerald, Springfield, MO, for appellants.

Stuart H. King, Springfield, MO, for respondents.

JEFFREY W. BATES, Judge.

Joe Dean Hadley, d/b/a Hadley Builders (Hadley) filed a two-count amended petition against homeowners Shawn and De'Ann Burton (collectively, the Burtons) for: (1) perfection of a mechanic's lien; and (2) breach of a construction contract (the contract). In the contract, the Burtons agreed to pay attorney's fees for enforcement and 10% interest on unpaid balances. The Burtons filed a counterclaim that included a count for breach of contract.

A jury found in Hadley's favor on the mechanic's lien and awarded him $85,000. On the breach of contract count, however, the jury determined that Hadley had sustained zero damages, even though the jury purported to find in Hadley's favor on that count. The jury found against the Burtons on their breach of contract count. After trial, the court denied Hadley's request for attorney's fees and a 10% rate of post-judgment interest. Instead, the judgment awarded Hadley $85,000 with post-judgment interest at the statutory rate of 9%. See § 408.040.1.[1]

Both Hadley and the Burtons have appealed from the judgment. Hadley contends the trial court erred by denying his request for attorney's fees and setting the rate of post-judgment interest at 9%. The Burtons present three points on appeal. First, they contend the trial court erred by denying the Burtons' motion for directed verdict at the close of all evidence because Hadley failed to submit substantial evidence of a "just and true account" of the claim as required by § 429.080. Second, they contend the court erred in giving Instruction No. 7 because it failed to follow substantive law on mechanic's liens in two respects. Third, they contend the court erred in granting partial summary judgment, denying a motion for judgment notwithstanding the verdict (JNOV) and

---

1. All references to statutes are to RSMo (2000). All references to rules are to Missouri Court Rules (2005).

allowing Hadley to amend the property description after trial because he did not comply with the requirement that the mechanic's lien include "a true description of the property." Finding no merit in any the parties' various contentions, the judgment is affirmed in all respects.

## I. Factual and Procedural History

On November 30, 2002, the Burtons and Hadley entered into the contract hiring Hadley to be the general contractor for construction of the Burtons' new home in Barry County, Missouri. Shawn Burton is a physical therapy assistant with construction experience, but he is not a general contractor. De'Ann Burton is an occupational therapist and program coordinator with some bookkeeping experience. The Burtons spent about five years working on the plans for construction of their new home and at least a year interviewing general contractors. They eventually decided on Hadley, who had 26 years of experience building mostly custom homes.

The Burtons and Hadley signed a written contract in which the Burtons agreed to pay the "net cost to [Hadley] of all expenses, plus 10% of said amount as commission for [Hadley]." The net cost was defined as "the actual cost for any and all expenses associated with this project." Thus, the Burtons agreed to pay actual cost plus commission directly to Hadley, who would pay his suppliers, subcontractors, and workers. The contract further required the Burtons to pay Hadley "Progress Payments to the Sum of $250,782.40 Estimated Cost." Payments were to be made to Hadley at thirty-day intervals, and any amount remaining unpaid after thirty days would accrue interest at the rate of 10%. In the event of enforcement or collection of the contract, the Burtons were to pay Hadley "all costs and expenses for such enforcement and/or collection, including reasonable attorney fees."

The parties arrived at the total estimated cost of $250,782.40 pursuant to a "Cost Estimate & Analysis" (the estimate) attached to the contract. The estimate was divided into three columns. The first column described the items to be included in the home. The middle column was Hadley's cost estimate for the items, and the third column, under the heading "Sub-Contractor," consisted of a list of items the Burtons had already done or were going to do themselves. Hadley agreed not to take a fee on any items contained in the third column, and a notation of "No %" was placed in the column. Hadley's fee was to be calculated based upon the payments for items in the second column, and the Burtons understood this. Before executing the contract, Hadley and the Burtons went through the estimate in detail at least twice.

On February 11, 2003, Hadley submitted his first request for payment (draw request) in the amount of $20,224.62. The draw request included a summary of items and backup documentation of bills and invoices associated with each item listed in the summary. Labor charges came from time sheets that were available for review by the Burtons. Hadley submitted the draw request to De'Ann Burton. She reviewed the documents, approved them and prepared a payout authorization to Fidelity Title Company (Fidelity). Fidelity handled all of the disbursements for the Burtons. The amount of Hadley's first draw request was paid the next day. On February 22, 2003, Hadley submitted his second draw request for $9,338.98, and that amount was similarly approved and paid about ten days later. This second draw request, as well as all subsequent ones, was prepared in the same manner and

with the same supporting documentation as the first one.

Kay Concrete was one of Hadley's suppliers for the Burton job, and the cost estimate for this work was included in the second column of the contract. In early March 2003, Hadley went to Kay Concrete to pay his bill for materials used in the construction of the Burtons' home. If Hadley paid early, he received an "early pay" discount. Hadley discovered that the Burtons had already paid this bill directly. Hadley learned that the Burtons had made a similar direct payment to Meeks, another of Hadley's suppliers for the Burtons' home construction job. The Burtons had learned about the early pay discount from Fidelity and requested funds to pay Kay Concrete and Meeks directly. Hadley told the Burtons that the early pay discount belonged to the contractor, and he insisted that the money paid to Kay Concrete and Meeks be refunded. The Burtons complied. The payments were returned, and the funds were re-issued to Hadley in accordance with the contract. Hadley was paid his 10% commission on these items.

After this occurred, the Burtons consulted with an attorney. He advised the Burtons that, before they authorized any further draw requests, Hadley should be required to sign a "Reservation of Rights Acknowledgment" (the acknowledgment). In relevant part, this document stated:

> [T]his Acknowledgement constitutes the entire understanding among the parties so far as reservation of rights and non-waiver by payment and supercedes [sic] all prior agreements or acknowledgements of the same between the parties. This Agreement arises under and is to be construed in accordance with Missouri law, the parties hereby expressly agreeing that Greene County, Missouri shall hold the only appropriate venue for resolution of any dispute arising from

this agreement and that the prevailing party shall be entitled to reasonable attorney's fees and costs.

The acknowledgment provisions relating to non-waiver by payment, Greene County venue and potential recovery of attorney's fees by the Burtons if they prevailed in a later dispute were new terms favorable to them that had not been included in the original contract.

On March 29, 2003, Hadley submitted his third draw request in the amount of $34,506.25. The Burtons reviewed the request and offered to pay that amount in full, but only if Hadley signed the acknowledgment. Hadley refused to do so because that document changed the terms of their contract. The Burtons did not pay the third draw request. In the meantime, the scheduled work continued. The last supplies delivered to the Burtons' home were incorporated into the project on April 15, 2003.

On April 26, 2003, Hadley submitted his fourth draw request in the amount of $32,717.26. Once again, the Burtons offered to pay that amount, but only if Hadley signed the acknowledgment. Hadley refused to do so. The Burtons did not pay the fourth draw request either. Hadley used his own funds to pay the subcontractors, suppliers and workers who provided the materials and labor included in the third and fourth draw requests. Hadley was not reimbursed by the Burtons for these payments. In early May 2003, Hadley filed a mechanic's lien statement with the Barry County Circuit Clerk, and he retained the services of an attorney to enforce the contract.

In July 2003, Hadley filed suit against the Burtons. As later amended, the petition included one count to enforce a mechanic's lien and another count for breach of contract. The Burtons filed an answer and a counterclaim containing counts for:

(1) breach of contract; (2) breach of implied warranty of habitability; (3) voidance of the mechanic's lien; (4) slander of title; and (5) slander. During discovery, Hadley propounded an interrogatory which the Burtons answered as follows:

31. Do you allege that the mechanic's lien filed by Joe Dean Hadley does not comply with the requirements of Missouri law for the filing and perfection of a mechanic's lien and, if so, identify each alleged defect in the lien.

***ANSWER***

***Shawn and DeAnn Burton***

**Missouri law requires a true and fair accounting of the debts owed. The numbers advanced by the Plaintiff are incorrect and thereby not a true and fair accounting of the debt owed.**

In April 2005, Hadley moved for summary judgment against all of the Burtons' counterclaims. In a separate motion, Hadley also moved for summary judgment on the mechanic's lien count. Paragraph 5 of the motion stated:

Defendants [the Burtons] have stipulated that all of the foundational elements to the mechanic's lien have been established except one. (A copy of Defendants' Answers to [Interrogatory No. 31] is attached hereto and made a part hereof as Exhibit 2). Therefore, Defendants' only dispute is whether Plaintiffs' Mechanic's Lien statement contained a just and true account of the demand due.

The record does not indicate that the Burtons filed a response to this motion as required by Rule 74.04(c)(2). Neither is there any indication that the Burtons disputed the accuracy of the statement in paragraph 5 of the motion.

Both of Hadley's motions for summary judgment were argued and decided in October 2005. The trial court granted summary judgment in favor of Hadley on three of the Burtons' counterclaims, leaving only the breach of contract and slander counterclaims to be tried. With respect to Hadley's motion for summary judgment on his mechanic's lien count, the court ruled as follows:

[Hadley] has complied with the requirements of Section 429 to establish the right to a mechanic's lien except for proof of "a just and true account" such that [Hadley] ought not have to prove all technical requirements. [Hadley] is granted partial summary judgment with respect to all matters except for proof as to the amount of the account.

In August 2006, a jury trial was held. At the close of all of the evidence, the Burtons moved for a directed verdict on the mechanic's lien count based on Hadley's alleged failure to establish a just and true account. The court overruled the motion. Hadley also moved for a directed verdict on the Burtons' counts for slander and breach of contract. The court sustained Hadley's motion as to the former count, but overruled the motion as to the latter count.

At the instruction conference, the court decided to give Instruction No. 7. This not-in-MAI instruction was the verdict-director tendered by Hadley to submit the mechanic's lien count to the jury. In relevant part, the instruction stated:

Fifth, plaintiff's lien statement is just and true and apprises the landowners of the materials plaintiff claims it furnished so that the landowner may make an investigation to determine whether the materials actually went into the building and whether they were lienable items and whether the charges were reasonable. . . .

The Burtons' counsel made the following objections to Instruction No. 7:

First, there is no finding or requirement that the jury find that the materials reflected in the—or are referenced in the mechanic's lien were the same materials or labor that went into the defendant's home or to benefit the defendant's home. Also, I think in paragraph fifth, it does not follow the language of the Ahrens v. McCarron Case and allows—for the purpose of finding a just and true account that this does require the jury to find that a reasonable person or party at interest would have special information based upon the mechanic's lien statement and an account attached thereto to identify the nature and extent of the materials or labor that was provided so as to allow that interested person to a reasonable investigation determine those materials and labor were actually provided and incorporated into the home. This doesn't require all of the elements necessary to establish the mechanic's lien under Missouri Law and the mechanic's lien statutes.

The court overruled these objections.

The jury was provided with three verdict forms. Verdict A was for Hadley's breach of contract count. Verdict B was for Hadley's mechanic's lien count. Verdict C was for the Burtons' breach of contract count. When the jury first returned, only Verdict B had been completed. The jury found in favor of Hadley and awarded him $85,000 in damages. Because Verdicts A and C had not been completed by the jurors, the court directed them to return to the jury room and deliberate further. The jury returned 20 minutes later. In Verdict A, the jury found in favor of Hadley, but he was awarded $0 as damages. In Verdict C, the jury found in favor of Hadley. The trial court accepted these verdicts, recorded them and discharged the jury without any objection from the parties.

After trial, Hadley filed a motion requesting an award of attorney's fees incurred in enforcing the contract. Because the real property on which the Burtons' home was located exceeded three acres in size, Hadley also filed a motion requesting the court to determine the specific description of the real property that was subject to the mechanic's lien. The court granted the latter motion and ordered that a survey of the property be done for that purpose.

In December 2006, the court entered a judgment for Hadley in the amount of $85,000 with a 10% post-judgment interest rate. The court denied Hadley's request for attorney's fees. The court reasoned that Hadley was unsuccessful on his breach of contract count because the jury had awarded him zero damages. The judgment contained a legal description of the specific part of the Burtons' real estate that was subject to the lien.

In January 2007, the Burtons moved to amend the judgment to reduce the rate of post-judgment interest to 9%. The Burtons also filed a motion for JNOV and alternative motion for new trial. The Burtons requested JNOV on the mechanic's lien count because they alleged that Hadley failed to present sufficient evidence of a "just and true account" of the claim and that the trial court erred in granting partial summary judgment on the technical requirements of the mechanics lien because the "true description of the property" was insufficient.[2] Alternatively, the Burtons sought a new trial because of

**2.** The Burtons did not challenge the sufficiency of the property description until after the trial had been concluded. The first time the Burtons mentioned this issue was in September 2006 in their suggestions in opposition to Hadley's motion to determine a specific description of real property.

alleged error in giving Instruction No. 7. The motion for new trial asserted that this instruction was contrary to Missouri law because it "did not include any requirement that the 'just and true account' apprise the landowners *and other interested parties* of the labor and materials which the lien claimant asserts were actually furnished and the charges reasonable [sic]." (Italics in original.)

In March 2007, the court granted the Burtons' request to reduce the rate of post-judgment interest to 9%. The other relief they requested was denied. These cross-appeals followed. Additional facts will be discussed as necessary to address each of the parties' points on appeal.

## II. Discussion and Decision

Hadley presents two points for decision. In Point I, he contends the trial court erred in denying him attorney's fees. In Point II, he contends the trial court erred in denying him a 10% rate of post-judgment interest. For ease of analysis, we will discuss these points together.

Article VII of the contract stated that the Burtons "hereby agree, in the event that enforcement and/or collection of this Contract, that [the Burtons] will pay all costs and expenses for such enforcement and/or collection, including reasonable attorney fees." Because Hadley's request for attorney's fees was based upon this contract provision, the trial court was required to comply with the terms set forth therein. *Vaughn v. Willard,* 37 S.W.3d 413, 417 (Mo.App.2001); *Garner v. Hubbs,* 17 S.W.3d 922, 930 (Mo.App.2000). In order to be entitled to such fees, it was necessary for Hadley to be the prevailing party on his breach of contract count. *Building Erection Services Co. v. Plastic Sales & Mfg. Co., Inc.,* 163 S.W.3d 472, 480 (Mo.App.2005); *Turner v. Shalberg,* 70 S.W.3d 653, 660 (Mo.App.2002); *Vaughn,* 37 S.W.3d at 417.

In this jury-tried case, the trial court could only determine attorney's fees if Hadley was entitled to them as a matter of law. *Howe v. ALD Servs., Inc.,* 941 S.W.2d 645, 652 (Mo.App.1997). Here, the denial of Hadley's request for attorney's fees resulted from the judge's decision that Hadley was not the prevailing party on his breach of contract count because the jury awarded him zero damages. This is a question of law which we review *de novo. Billings Mut. Ins. Co. v. Cameron Mut. Ins. Co.,* 229 S.W.3d 138, 142 (Mo.App. 2007).

Hadley's breach of contract count was submitted to the jury via Instruction No. 11, which stated:

> Your verdict must be for plaintiff Joe Dean Hadley, dba Hadley Builders on the claim for breach of contract against defendants Burton if you believe:
>
> First, plaintiff and defendants entered into an agreement whereby plaintiff agreed to build a home for defendants and defendants agreed to pay plaintiff the costs, as defined by the contract, plus 10% commission, and
>
> Second, defendants breached the agreement when defendants Burton refused to pay plaintiff under the agreement; or defendants breached the agreement by authorizing draws and payment on the agreement only subject to the Reservation of Rights Acknowledgement.
>
> Third, plaintiff was thereby damaged . . . .

In Verdict A, the jurors found for Hadley, but they expressly determined that he had sustained no damages. In light of that finding, the jury should have returned a verdict in favor of the Burtons. Therefore, Verdict A was facially inconsistent to the point of being self-destructive. *See*

*Wilferth v. Pruett*, 854 S.W.2d 625, 626–27 (Mo.App.1993); *Ivy v. Wal–Mart Stores, Inc.*, 777 S.W.2d 682, 683–84 (Mo.App. 1989); *Porter v. Mallet*, 596 S.W.2d 451, 453 (Mo.App.1980).

Prior to 1986, entry of a judgment based upon an inconsistent verdict was improper because the verdict could not be treated as a definite finding for either party. *See, e.g., Boone v. Richardson*, 388 S.W.2d 68, 76–77 (Mo.App.1965). In 1986, that line of authority was overruled in *Douglass v. Safire*, 712 S.W.2d 373 (Mo. banc 1986):

> We now hold that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived. The reason is that, if the point is raised as soon as the verdict is returned, any error is capable of correction by ordering the jury to return for further deliberation. Our holding is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible. Safire cites cases in which it is apparently held that error may be predicated on an inconsistent verdict even though the appealing party made no request that the jury be returned. He would place the entire burden on the trial court. We do not agree. No square decision of ours is cited in support of the proposition advanced. The other cases, if they do support Safire's claim, should no longer be followed. In our present procedural climate, which encourages the trial of multi-faceted cases together, it is all the more important that claims of infirmity

in the verdict be presented at a time when something can be done to correct the fault.

*Id.* at 374–75 (footnote omitted). In the case at bar, Hadley did not raise the issue of Verdict A's inconsistency with the trial court prior to discharge of the jury. Therefore, the inconsistency was waived. *Id.* at 374. Once that waiver occurred, the trial court did not err in treating Verdict A as a verdict in favor of the Burtons. *See, e.g., O'Brien v. Mobil Oil Corp.*, 749 S.W.2d 457, 457–58 (Mo.App.1988). Hadley's waiver of the inconsistency also dooms his alternative argument that this Court should award him nominal damages so he could be treated as the prevailing party below. Once the jury returned its Verdict A, it became Hadley's responsibility to ask that the jury be given a chance to resolve the inconsistency by awarding him nominal damages. *See, e.g., Blue v. Harrah's North Kansas City, LLC*, 170 S.W.3d 466, 476 (Mo.App.2005); *Jacobs v. Bonser*, 46 S.W.3d 41, 46–47 (Mo.App.2001).[3] As *Blue* and *Jacobs* make clear, it was up to the jury to assess the damages in this case. Neither the trial court nor this Court may supersede the jury's authority in that regard. *Cf. Wallace v. Grasso*, 119 S.W.3d 567, 579–80 (Mo.App.2003) (holding that, when a trial court is the ultimate factfinder, it could grant nominal damages to a party that failed to prove any actual damages). Because Hadley was not the prevailing party on his breach of contract count, he was not entitled to attorney's fees. *See American Property Maintenance v. Monia*, 59 S.W.3d 640, 645–46 (Mo.App.2001) (contractor not the prevailing party on its contract claim, and therefore not entitled to attorney's fees under the contract). Therefore, the trial court

---

**3.** If a party is seeking nominal damages, it is permissible to ask for a jury instruction on that issue. *See, e.g., Clark v. Beverly Enterprises–Missouri, Inc.*, 872 S.W.2d 522, 524–25 (Mo.App.1994); *Simpkins v. Ryder Freight System, Inc.*, 855 S.W.2d 416, 423 (Mo.App. 1993); MAI 23.08 [1990 Revision], Committee Comment. Hadley did not do so.

did not err in denying Hadley's request for such fees.[4] Hadley's Point I is denied.

■ In Hadley's second point, he argues that the trial court erred in denying him the 10% contract rate of post-judgment interest. *See* § 408.040.1 ("judgments and orders for money upon contracts bearing more than nine percent interest shall bear the same interest borne by such contracts"). Because Hadley did not prevail on his breach of contract count, however, he is not entitled to the higher contract rate of interest. *See American Property Maintenance*, 59 S.W.3d at 645–46 (because the contractor did not prevail on its contract claim, it was not entitled to post-judgment interest at the contract rate). Therefore, the trial court correctly reduced the post-judgment interest to 9%. Hadley's Point II is denied.

The Burtons have cross-appealed, but they challenge only the mechanic's lien award. In Point I, they contend the trial court erred by overruling their motion for a directed verdict at the close of all the evidence and for JNOV because Hadley failed to submit sufficient evidence of a "just and true account" of his mechanic's lien. In Point II, they contend the court erred by giving Instruction No. 7 because it failed to follow substantive law concerning "other interested parties." In Point III, they contend the court erred in granting the mechanic's lien because it did not contain a "true description of the property." For ease of analysis, we will address the Burtons' three points in reverse order.

### *Point III*

The Burtons' third point challenges the trial court's entry of partial summary judgment for Hadley on the mechanic's lien count, denial of a motion for JNOV and grant of an after-trial motion to deter-

mine a specific description of the real property subject to the lien. The basis for all of these alleged errors is that the lien did not contain a true description of the property.

■ We first address the partial summary judgment and JNOV issues. In determining whether the trial court properly granted summary judgment, we employ a *de novo* standard of review. *City of Springfield v. Gee*, 149 S.W.3d 609, 612 (Mo.App.2004). "The propriety of summary judgment is purely an issue of law." *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). A motion for JNOV should not be granted unless the motion identifies at least one element of the plaintiff's case that lacks evidentiary support. *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007).

■ Section 429.080 requires, *inter alia*, that the lien filed with the circuit clerk contain "a true description of the property, or so near as to identify the same, upon which the lien is intended to apply, with the name of the owner or contractor, or both, if known to the person filing the lien. . . ." *Id.* Compliance with the requirements of this statute "is a condition precedent to the right to enforce the lien. . . ." *KC Excavating and Grading, Inc. v. Crane Const. Co.*, 141 S.W.3d 401, 410 (Mo.App.2004). Any party opposing enforcement, however, must challenge a matter of compliance in the circuit court in order for an appellate court to have anything to review. *Id.; see also American Property Maintenance v. Monia*, 59 S.W.3d 640, 645 (Mo.App.2001).

---

4. Hadley also requests attorney's fees incurred on appeal. That request is similarly

denied. *See Hoag v. McBride & Son Inv. Co., Inc.*, 967 S.W.2d 157, 175 (Mo.App.1998).

Hadley argues that the Burtons failed to preserve this claim of error for review because they did not specifically challenge the property description when the trial court was considering the motion for summary judgment on the mechanic's lien count. This Court agrees. In Hadley's motion, he identified only one matter of statutory compliance that the Burtons challenged. That was the "true and fair accounting of the debts owed[.]" According to the motion, the Burtons did not challenge the property description. The record on appeal contains no response by the Burtons, and the docket sheet does not show that any response was filed.[5] By failing to respond, the Burtons admitted the truth of all of the factual allegations in Hadley's motion. Rule 74.04(c)(2). The trial court granted a partial summary judgment on those issues not contested by the Burtons. We also note that the property description was not challenged by the Burtons at trial. Instead, the issue was first raised after trial in the Burtons' opposition to Hadley's motion to determine a more specific description of real property and in the Burtons' motion for JNOV or new trial. In our view, the Burtons' failure to challenge the property description at the summary judgment stage of the proceeding leaves this Court nothing to review on appeal. *KC Excavating,* 141 S.W.3d at 410; *American Property Maintenance,* 59 S.W.3d at 645. Therefore the court did not err in granting partial summary judgment to Hadley or in denying the Burtons' motion for JNOV.[6] The trial court also did not err in granting Hadley's post-trial request to have the property surveyed and to substitute a property description limited to the maximum acreage allowed by statute. *See, e.g., Killian Const. Co., Inc. v. Frontier Town–Missouri, Inc.,* 161 S.W.3d 408, 411 (Mo.App.2005); *Hill Behan Lumber Co. v. Dinan,* 786 S.W.2d 904, 906 (Mo.App.1990); *Paradise Homes, Inc. v. Helton,* 631 S.W.2d 51, 52–53 (Mo. App.1981). The Burtons' Point III is denied.

## Point II

In the Burtons' second point, they contend the trial court erred in giving Instruction No. 7 regarding the mechanic's lien claim because the instruction did not follow the substantive law. The Burtons argue the instruction was erroneous because it

---

**5.** Rule 81.12(a) requires the record on appeal to contain "all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision." If the Burtons did file a response to the motion, it was their duty to include it in the legal file.

**6.** Even if this Court were to reach this claim of error, the Burtons would not prevail because Hadley substantially complied with the statute. The owners and the contractor were identified by name, as the statute requires, and the property description in the lien is exactly the same as the description in the contract signed by both parties: "Part of the NE1/4 of the NE1/4 Sec. 33, Township 26, Range 25." No third parties are involved in this litigation. Therefore, the property description was sufficient to comply with § 429.080. *See Campbell v. Rickert,* 938 S.W.2d 282, 286 (Mo.App.1997) (description of the property need not be letter perfect; rather, the description need only be sufficient to enable one familiar with the locality to identify the premises intended to be covered by the lien); *Breckenridge Material Co. v. Byrnesville Constr. Co., Inc.,* 842 S.W.2d 551, 552 (Mo.App.1992) (when the rights of third parties are not involved, the description need only be sufficient to enable a person familiar with the locality to identify the premises intended to be covered by the lien); *Hertel Elec. Co. v. Gabriel,* 292 S.W.2d 95, 99 (Mo.App. 1956) (the property description is sufficient if it is specific and definite enough to enable a person familiar with the locality to identify the premises intended to be covered by the lien).

omitted any reference to other interested parties.

 There is no pattern MAI instruction to submit a mechanic's lien theory to the jury. Therefore, this Court reviews a not-in-MAI instruction to determine whether the jury could understand the instruction and whether the instruction followed the applicable substantive law by submitting the ultimate facts required to sustain a verdict. *Wiskur v. Johnson*, 156 S.W.3d 477, 481 (Mo.App. 2005).[7] "What the ultimate facts are in a given case are determined on a case-by-case basis." *Id.* Instruction No. 7 stated:

> Your verdict must be for plaintiff if you believe:
>
> First, the material and labor mentioned in evidence were furnished by plaintiff to defendants; and
>
> Second, the materials and labor furnished by plaintiff to defendants were for use in the home owned by defendants, and
>
> Third, the materials sold and furnished by plaintiff to defendant are the same materials referred to in plaintiff's lien statement; and
>
> Fourth, plaintiff's charges were reasonable;
>
> Fifth, plaintiff's lien statement is just and true and apprises the landowners of the materials plaintiff claims it furnished so that the landowner may make an investigation to determine whether the materials actually went into the building and whether they were lienable items and whether the charges were reasonable,

> Unless you believe plaintiff is not entitled to recover by reason of Instruction Number 8.

This not-in-MAI instruction was patterned after an instruction in *Ahrens & McCarron, Inc. v. Mullenix Corp.*, 793 S.W.2d 534 (Mo.App.1990). In *Ahrens*, the instruction similar to the fifth paragraph above stated: "Plaintiff's lien statement is just and true and apprises the landowners *or other interested parties* of the materials Plaintiff claims it furnished...." *Id.* at 538 (italics added). The Burtons argue the Instruction No. 7 did not follow the substantive law because it omitted the italicized language concerning "other interested parties." This Court disagrees.

In *Ahrens*, a supplier brought suit against a developer and contractor seeking to enforce several mechanic's liens. *Id.* at 536–37. Other interested parties besides the contractor and homeowner were involved in that case. Therefore, the ultimate facts necessary to properly submit the mechanic's lien theory necessarily included a reference to other interested parties. In the case at bar, however, Hadley and the Burtons were the only parties litigating this mechanic's lien. No third parties were involved. In fact, the evidence established that Hadley had paid all of the subcontractors, suppliers and laborers out of his own pocket. Thus, the fifth paragraph of Instruction No. 7 properly submitted the ultimate fact of whether the lien sufficiently apprised the Burtons, as landowners, of the materials Hadley claimed to have furnished and incorporated into their dwelling. *See Commercial Openings, Inc. v. Mathews*, 819 S.W.2d 347, 350 (Mo. banc 1991) (holding that the adequacy of a subcontractor's lien statement turned on whether it provided suffi-

---

7. In addition, the instruction must be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(b).

cient details and itemization to enable the owner to investigate and determine the propriety of the lien claim); *Bolivar Insulation Co. v. Bella Pointe Development, L.L.C.*, 166 S.W.3d 610, 613 (Mo.App.2005) (same holding).

■ The Burtons also argue that Instruction No. 7 failed to follow the substantive law because the fifth paragraph omitted any reference to labor. Hadley, however, argues that this argument is not preserved for review. This Court agrees.

Rule 70.03 requires that counsel make specific objections to instructions considered erroneous. "No party may assign as error the giving or failure to give instructions unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *Id.* After reviewing the record of the instruction conference, we conclude that the Burtons failed to distinctly and specifically alert the trial court and opposing counsel that Instruction No. 7 was defective because it omitted any reference to labor. The Burtons' failure to do so means this claim of error is not preserved for review. *Vintila v. Drassen*, 52 S.W.3d 28, 43 (Mo. App.2001). Furthermore, Rule 70.03 requires that objections to instructions must be carried forward in the motion for new trial. *Goralnik v. United Fire and Cas. Co.*, 240 S.W.3d 203, 210 (Mo.App.2007); *Stonger ex rel. Stonger v. Riggs*, 85 S.W.3d 703, 706 (Mo.App.2002). The only alleged defect in Instruction No. 7 which the Burtons presented to the trial court in the motion for new trial was that the instruction omitted any reference to other interested parties. Even assuming the Burtons had made a definite objection to the omission of labor from Instruction No. 7 at the instruction conference, the failure to carry that specific objection forward in the motion for new trial means that claim of error

is not preserved for appellate review. *Hertz Corp. v. Raks Hospitality, Inc.*, 196 S.W.3d 536, 546 (Mo.App.2006); *Williams v. Finance Plaza, Inc.*, 78 S.W.3d 175, 181 (Mo.App.2002); *Hutchison v. Mo. Highway and Transp. Comm'n*, 996 S.W.2d 109, 110 (Mo.App.1999). The Burtons' Point II is denied.

## Point I

■ In the Burtons' first point, they contend the trial court erred in denying their motion for directed verdict at the close of all the evidence and motion for JNOV because Hadley failed to submit sufficient evidence that the statement of mechanic's lien contained "a just and true account" as required by § 429.080. Our review of the trial court's denial of a motion for JNOV and a motion for a directed verdict is essentially the same. *Martens v. White*, 195 S.W.3d 548, 554 (Mo.App. 2006). Upon review, this Court must determine whether Hadley made a submissible case. *Id.* "[T]his Court takes the evidence in the light most favorable to the verdict, giving the prevailing party all reasonable inferences from the verdict and disregarding the unfavorable evidence." *Nemani v. St. Louis University*, 33 S.W.3d 184, 185 (Mo. banc 2000). A directed verdict is proper if there is no substantial evidence to support one of the elements of a cause of action. *Gulley v. Werth*, 61 S.W.3d 293, 296 (Mo.App.2001). This Court "will reverse the jury's verdict for insufficient evidence only where there is a complete absence of probative fact to support the jury's conclusion." *Giddens v. Kansas City Southern Ry. Co.*, 29 S.W.3d 813, 818 (Mo. banc 2000); *Martens*, 195 S.W.3d at 554. In reviewing this claim of error, we are also mindful that "[t]he statutes creating mechanic's liens are remedial in nature." *Bolivar Insulation Co. v. Bella Pointe Development, L.L.C.*, 166 S.W.3d

610, 613 (Mo.App.2005). "Pleadings setting forth a lien and seeking its enforcement are to be favorably construed and given the benefit of every reasonable and fair intendment." *Id.*

 Section 429.080 requires an original contractor seeking to obtain the benefit of its provisions to file "a just and true account of the demand due him or them after all just credits have been given, which is to be a lien upon such building or other improvements ..." *Id.* "There is no precise definition of a just and true account in mechanic's lien cases. Whether or not a lien statement is a just and true account depends upon the particular facts of each case." *S & R Builders & Suppliers, Inc. v. Marler,* 610 S.W.2d 690, 697 (Mo.App.1980); *Allied Pools, Inc. v. Sowash,* 735 S.W.2d 421, 426 (Mo.App.1987). "Determination of the adequacy of a lien statement turns on whether the statement provides detail and itemization sufficient to enable the owner to investigate and determine the propriety of the lien claimed." *Bolivar Insulation,* 166 S.W.3d at 613; *see Coomes v. Slater Development Corp.,* 36 S.W.3d 412, 418 (Mo.App.2001) (lien statement sufficient when it permits an investigation to determine "whether the materials the claimant asserts he has furnished were actually used in the construction of the building, whether they were lienable items, and whether the amount charged is proper").

 The mechanic's lien statement in this case consisted of three pages. The first page indicated that Hadley was filing the account set out on the attached Exhibits A and B, and it described the real property subject to the lien. The second and third pages of the statement consisted of Exhibits A and B, which were the same documents submitted to the Burtons with Hadley's third and fourth draw requests:

**Exhibit A**

| | | | |
|---|---|---|---|
| 3-7 | × | Aurora Motor & Machine | 87.91 |
| 3-7 | × | Meeks Republic | 18,992.33 |
| 3-7 | × | Kay Concrete Co | 445.04 |
| 3-20 | × | Burton Building Prod | 1460.45 |
| 3-20 | × | Smith Const 2nd Draw | 8700.00 |
| 3-20 | | Labor 3-3 — 3-7 Soffiet | 51.00 |
| 3-20 | | Labor 3-10 — 3-14 Soffiet | 688.50 |
| | | Subtotal | $30,425.23 |
| | | Builder's fee 10% | $ 3,042.53 |
| | | Subtotal | $33,467.76 |
| | Windows Builders fee 10% | | $ 1038.99 |
| | | Total Due | 34,506.75 |

**Exhibit B**

| | | | |
|---|---|---|---|
| 4-4 | × | Roof Labor | 1937.00 |
| 4-4 | | Crane Electric | 4452.93 |
| 4-4 | | Monett Sheet Metal | 5500.00 |
| 4-4 | | Meeks Republic | 6825.69 |
| 4-4 | | Hillhouse Services | 2897.50 |
| 4-4 | | Journagan True Value | 20.43 |
| 4-6 | | 3-16 — 3-20 | 1045.50 |
| 4-6 | | 3-24 — 3-28 | 280.50 |
| 4-15 | | Acme Brick 7516.58 | 7516.58 |
| 4-15 | | Meeks Credit- | 572.35 |
| 4-15 | | Burtons Credit- | 160.73 |
| | | Subtotal | $29,743.05 |
| | 10% Builders fee | | $ 2,974.31 |
| | | | 32,717.36 |

At trial, Hadley adduced evidence that he submitted and supported his third and fourth draw requests in exactly the same fashion as the first two, which were approved by the Burtons and paid by Fidelity. De'Ann Burton, who had a bookkeeping background, testified that she reviewed the summary of each draw request, along with corresponding bills and invoices attached. References to labor were based upon time sheets which were available for her review. De'Ann Burton also testified that she understood the bills for the third and fourth draw requests were the same as those listed under the mechanic's lien, and that each of the suppliers listed provided material or labor for the Burtons' house. She disputed only the accuracy of certain amounts.

Hadley argues that he made a submissible case because the lien statement identified the subcontractors and suppliers, dates and amount of charges in sufficient detail for the Burtons to investigate the accuracy of the charges. To support that argument, Hadley points to evidence that the Burtons did, in fact, investigate charges associated with the third draw

request when they first consulted their attorney and offered to pay the amount requested in full if Hadley would sign the acknowledgement.

After reviewing the record in a light most favorable to Hadley, and bearing in mind the remedial nature of the mechanic's lien statute, this Court agrees that Hadley made a submissible case. The Burtons were intimately familiar with the project, and the mechanic's lien statement provided them with sufficient information to conduct a reasonable investigation into what subcontractors, materials and labor went into the construction of their home. Accordingly, the lien statement provided a just and true account of the claim with "detail and itemization sufficient to enable the owner to investigate and determine the propriety of the lien claim." *Bolivar Insulation*, 166 S.W.3d at 613. The trial court did not err in denying the Burtons' motion for a directed verdict or JNOV. *See Gulley*, 61 S.W.3d at 296; *Martens*, 195 S.W.3d at 554. The Burtons' Point I is denied.

The judgment of the trial court is affirmed in all respects.

PARRISH, P.J., and SCOTT, J., concur.