

# Missouri Court of Appeals
## Southern District

### In Division

WAYNE D. MORELOCK, KATHY J. )
MORELOCK, and MORELOCK FAMILY )
LIMITED PARTNERSHIP, )
                              )
      Plaintiffs-Appellants, )
                              )
v. )     No. SD37431
                              )     Filed: November 13, 2023
HIGHLAND SPRINGS COMMUNITY )
ASSOCIATION, INC., SAMUEL M. )
CORYELL, and JENNIFER L. CORYELL, )
                              )
      Defendants-Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Charles D. Curless, Senior Judge

### VACATED IN PART, AFFIRMED IN PART, AND REMANDED WITH DIRECTIONS

This case arose after a "highly reflective" metal roof (Roof) was installed on the newly constructed home of Samuel and Jennifer Coryell (the Coryells). The Roof was approved by Highland Springs Community Association, Inc. (HSCA). The Coryells built their home on property purchased from the Morelock Family Limited Partnership (MFLP). The Coryells' property shares a boundary line with property owned by Wayne and Kathy Morelock (the Morelocks). Hereinafter, we will refer to the Morelocks and MFLP collectively as Plaintiffs when appropriate.

The Morelocks sued the Coryells and HSCA concerning the Roof. The case was tried to a jury. The jury returned Verdict B in favor of the Morelocks and against HSCA, but no damages were awarded to the Morelocks. The jury returned Verdict C, in favor of the Morelocks against HSCA, and awarded the Morelocks $500,000 in damages due to the diminution in value of their property after installation of the Roof. In Verdicts A and D, the jury found in favor of the Coryells on the claims asserted against them by the Morelocks. There were no objections raised by the parties to any of the verdicts. The trial court accepted the verdicts, discharged the jury and entered judgment (Judgment) in due course.

Thereafter, the trial court filed a "Post-Trial Order and Amended Judgment" (Amended Judgment). Therein, the trial court granted a judgment notwithstanding the verdict (JNOV) for HSCA. This ruling was purportedly based on the verdicts being inconsistent, despite that not being a ground specified in HSCA's motion for JNOV. The Amended Judgment also denied Plaintiffs' motion to amend the judgment to: (1) award attorney's fees and costs with respect to a boundary-line change to which the Coryells agreed; and (2) order the Coryells to bear their own costs at trial.

On appeal, Plaintiffs present four points. Points 1 and 2 contend the trial court erred by entering JNOV against the Morelocks because: (1) assuming there was any inconsistency in the verdicts, HSCA waived that objection by not asserting that objection before the jury was discharged; and (2) the verdicts were consistent because the liability of HSCA was not premised upon the conduct of the Coryells. Point 3 concerns the boundary-line change between the Morelock and Coryell properties. In that point, Plaintiffs contend the trial court erred by denying Plaintiffs' motion to amend the judgment to award attorney's fees and costs, which were authorized by the Coryells' agreement with MFLP to purchase the property.

2

Point 4 contends that, pursuant to § 514.090, the trial court erred in denying the Plaintiffs' motion to amend the judgment to order the Coryells to bear their own costs at trial.[1]

Because Points 1-3 have merit, we vacate the entry of JNOV in favor of HSCA and the denial of Plaintiffs' motion to amend the judgment to award attorney's fees and costs with respect to the boundary-line change. We remand with directions for the trial court to: (1) enter a second amended judgment, in accordance with Verdict C, finding in favor of the Morelocks and awarding them $500,000 in property damages from HSCA; (2) order the Coryells to execute all documents necessary to facilitate the change in the boundary line; and (3) conduct further proceedings for the purpose of awarding reasonable attorney's fees and costs to MFLP with respect to the boundary-line change. In all other respects, the Amended Judgment is affirmed.

## Procedural Background

The Morelocks filed suit against the Coryells and HSCA in May 2018. The Coryells filed a counterclaim against the Morelocks and MFLP concerning, *inter alia*, a change to the boundary line between the Morelock and Coryell properties.[2] In a second amended petition, MFLP was added as a plaintiff via a new count, Count 7 (Count 7), which asked the trial court to require the Coryells to execute the final replat that established the boundary line between the Morelock and Coryell properties. Count 7 alleged the Coryells already had agreed to this procedure in the Purchase and Sales Agreement (PSA), which they signed to

---

[1] All statutory references are to RSMo (2016). All rule references are to Missouri Court Rules (2022).

[2] The Coryells' counterclaim alleged two other counts that were later disposed of by an order granting partial summary judgment.

purchase their property from MFLP.[3]  One week before trial, the Coryells dismissed without prejudice the remaining count of their counterclaim concerning the boundary.  That left only Plaintiffs' Count 7 boundary-line claim to be decided at trial.

The jury trial was held in October 2021.  As an initial matter, the parties agreed that: (1) all lot and home owners in the parties' subdivision are bound by the "Master Declaration of Covenants and Restrictions" and the "Design Guidelines" of HSCA (collectively, the Design Guidelines); and (2) HSCA is responsible for administration and enforcement of the Design Guidelines.  The Morelocks' theory of the case was that material installed on the Roof was not approved before installation, as required by the Design Guidelines.  The Coryells' position was that they had received approval for the Roof material from the HSCA. The Coryells introduced evidence that:  (1) HSCA had final, binding authority to decide issues of interpretation and to resolve disputes between owners pursuant to the Design Guidelines; and (2) HSCA had decided the issue of compliance of the Roof in the Coryells' favor.  During the eight-day trial, the jury heard extensive evidence about:  (1) both action and inaction by HSCA regarding the interpretation and enforcement of the Design Guidelines relating to the Roof material; and (2) damages resulting from the diminution in value of the Morelocks' property after the Roof was installed.

Insofar as relevant here, the Morelocks submitted four verdict forms to the jury: nuisance against the Coryells (Verdict A); negligence against HSCA (Verdict B); breach of contract against HSCA (Verdict C); and breach of contract against the Coryells (Verdict D). The trial court also advised the jury, via separate instruction, that the judge would decide the boundary-line issue involving Plaintiffs and the Coryells.

---

[3]  While MFLP was the only plaintiff that was a party to the PSA, the Morelocks and MFLP were all named plaintiffs in Count 7, and they all sought relief pursuant to that count.

4

The jury returned verdicts for the Coryells and against the Morelocks in Verdicts A (nuisance) and D (breach of contract). The jury found for the Morelocks and against HSCA in Verdict B (negligence) and awarded $0 in damages. The jury found for the Morelocks and against HSCA in Verdict C (breach of contract) and awarded the Morelocks $500,000 in property damages. No objections were made to any of the verdicts.[4] The trial court accepted the verdicts and discharged the jury. After the jury was discharged, the Coryells stipulated to change the boundary line as requested by Plaintiffs in Count 7. A week later, Plaintiffs filed their motion for attorney's fees and costs relating to the boundary-line change.

In November 2021, the trial court entered the Judgment in accordance with the jury's verdicts. On the Morelocks' breach-of-contract claim against HSCA, the court entered judgment in favor of the Morelocks and against HSCA and awarded the Morelocks $500,000 property damages. With respect to the Count 7 boundary-line change, the court stated:

a) Following the close of evidence, the Coryells stipulated that they would sign an amended plat prepared by the Morelocks to move the boundary line between the lot owned by the Coryells and the lot owned by the Morelocks. The Coryells are ordered to execute all documents necessary to facilitate said boundary exchange.

b) The claim of Plaintiffs for attorney's fees is denied.

… The costs the Coryells incurred herein are assessed to Plaintiffs. The costs that Plaintiffs incurred herein are assessed to HSCA.

---

[4] Verdict B was internally inconsistent because the jury found for Plaintiffs, but wrote "none" in each of the blanks for assessing damages. *See Douglass v. Safire*, 712 S.W.2d 373, 374 (Mo. banc 1986). The inconsistency was waived because it was not brought to the attention of the trial court before the jury was discharged. *Id.*; *see also Hadley v. Burton*, 265 S.W.3d 361, 370 (Mo. App. 2008). "In negligence cases where unliquidated damages are an element of the cause of action, a verdict finding for the plaintiff but awarding no damages is treated as a verdict for the defendant." *China Worldbest Grp. Co. v. Empire Bank*, 373 S.W.3d 9, 16 (Mo. App. 2012); *see Campbell v. Kelley*, 719 S.W.2d 769, 771 (Mo. banc 1986).

In December 2021, Plaintiffs filed a motion to amend the judgment. This motion requested, *inter alia*, that the trial court: (1) award attorney's fees and costs in connection with the boundary-line change pursuant to Count 7; and (2) given the disposition of Count 7, order the Coryells to bear their own costs in the proceeding "as they were not a prevailing party in total[.]"

Around this same time, HSCA filed its motion for JNOV, a new trial, or a remittitur. With respect to the JNOV relief, HSCA asserted that the Morelocks failed to make a submissible case for breach of contract. With respect to the requested new trial, HSCA asserted only that the verdict was against the weight of the evidence. HSCA discussed what it viewed as inconsistencies in the verdicts returned by the jury, but HSCA did not seek JNOV relief on this ground. A hearing on post-trial motions was scheduled for March 2022, but that hearing never occurred.

In February 2022, the trial court filed an Amended Judgment entering JNOV for HSCA on the basis that Verdict C was inconsistent with Verdict D in favor of the Coryells. This was not a ground raised by HSCA in its JNOV motion. The trial court's rationale was that JNOV was appropriate "in a case such as this, where a verdict against a defendant is necessarily premised on the liability of a co-defendant who is found non-liable[.]" The disposition of Count 7 (quoted above from the original Judgment) was omitted entirely from the Amended Judgment.[5] The court also denied Plaintiffs' motion to amend the judgment,

---

[5] On review, it is apparent to us that the trial court inadvertently omitted the Count 7 disposition, particularly given the Coryells' own stipulation at trial. Further, there was nothing in the Amended Judgment to indicate that the court did not intend the Amended Judgment to rule on all issues and be the final judgment in the case. *See* Rule 78.07(d) ("[u]nless an amended judgment shall otherwise specify, an amended judgment shall be deemed a new judgment for all purposes"). Accordingly, on remand, we have directed the trial court to reinstate the language from the original Judgment that the Coryells execute all documents necessary to facilitate the boundary-line change.

6

thereby denying the request for attorney's fees and costs in connection with the boundary-line change, and the request that the Coryells bear their own costs. This appeal followed. Additional facts will be included below as we address Plaintiffs' four points on appeal. For ease of analysis, we will discuss Plaintiffs' first two points together.

**Discussion and Decision**

*Points 1 and 2*

The trial court's decision to grant a JNOV is a question of law that we review *de novo*. ***Darks v. Jackson Cnty.***, 601 S.W.3d 247, 259 (Mo. App. 2020); ***Lindahl v. State***, 359 S.W.3d 489, 493 (Mo. App. 2011). A presumption exists favoring the reversal of a JNOV. ***Arkansas-Missouri Forest Products, LLC v. Lerner***, 486 S.W.3d 438, 447 (Mo. App. 2016). This presumption exists because "[a] JNOV is a drastic action that can only be granted if reasonable persons cannot differ on the disposition of the case." ***Id.***; ***Darks***, 601 S.W.3d at 259. In reviewing a trial court's ruling with respect to the entry of a JNOV, we view the evidence in the light most favorable to the jury's verdict, giving the prevailing party all reasonable inferences and disregarding all conflicting evidence and inferences. ***Gilmore v. Missouri Dep't of Soc. Servs., Children's Div.***, 658 S.W.3d 146, 152 (Mo. App. 2022).

The first two points contend the trial court erred in entering JNOV for HSCA, and against the Morelocks, on the basis that Verdict C was inconsistent with Verdict D in favor of the Coryells. Point 1 contends the trial court lacked the authority to enter the JNOV based on inconsistent verdicts because HSCA "waived any objection concerning inconsistent verdicts, in that [HSCA] did not object to any verdict as inconsistent before discharge of the jury." We agree.

Since 1986, the rule in Missouri is that "a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is

7

discharged or that claim is waived." ***Blue v. Harrah's North Kansas City, LLC***, 170 S.W.3d 466, 474 (Mo. App. 2005); *see **Douglass v. Safire***, 712 S.W.2d 373, 374 (Mo. banc 1986). In 1986, the Supreme Court of Missouri held in ***Douglass*** that a party must object to verdicts as inconsistent before the jury is discharged so that the jury can return for further deliberation to correct the error. ***Douglass***, 712 S.W.2d at 374.[6] Thus, if an objection based on inconsistent verdicts is *not* made before the jury is discharged, the claim of inconsistency is waived:

> We now hold that a claim that a verdict is inconsistent to the point of being self-destructive must be presented to the trial court before the jury is discharged. Otherwise the claim of inconsistency will be held to have been waived. The reason is that, if the point is raised as soon as the verdict is returned, any error is capable of correction by ordering the jury to return for further deliberation. Our holding is in accord with the usual rule that the trial court must be given the opportunity to correct error while correction is still possible.

***Douglass***, 712 S.W.2d at 374. The ***Douglass*** court further explained that, "[i]n our present procedural climate, which encourages the trial of multi-faceted cases together, it is all the more important that claims of infirmity in the verdict be presented at a time when something can be done to correct the fault." *Id*. at 374-75.

***Douglass*** involved claims for injuries and property damage arising from a motorcycle-automobile accident. The motorcycle passenger (Douglass) sued the car driver

---

[6] ***Douglass*** remains controlling Supreme Court of Missouri precedent. *See **Massood v. Fedynich***, 530 S.W.3d 49, 60 (Mo. App. 2017); ***Eisenmann v. Podhorn***, 528 S.W.3d 22, 39 n.13 (Mo. App. 2017); ***Foreman v. AO Smith Corp.***, 477 S.W.3d 649, 657 (Mo. App. 2015); ***Hadley v. Burton***, 265 S.W.3d 361, 370 (Mo. App. 2008); ***Harrell v. Mercy Health Servs. Corp.***, 229 S.W.3d 614, 618 (Mo. App. 2007); ***Chas. Grosse & Son, Inc. v. Cass Bank & Trust Co.***, 925 S.W.2d 208, 209 (Mo. App. 1996); ***Hulshof v. Noranda Aluminum, Inc.***, 835 S.W.2d 411, 416 (Mo. App. 1992); ***Ivy v. Wal-Mart Stores, Inc.***, 777 S.W.2d 682, 684 (Mo. App. 1989); ***Holmes v. Drakey***, 759 S.W.2d 610, 611 (Mo. App. 1988); ***O'Brien v. Mobil Oil Corp.***, 749 S.W.2d 457, 458 (Mo. App. 1988).

8

(Safire), who cross-claimed against the motorcycle driver (Richey). The jury received an apportionment-of-fault instruction on both claims and returned a verdict for Douglass, finding Safire 85% at fault and Richey 15% at fault. However, on Safire's property-damage claim, the jury found for Richey. No party objected on the ground that the two verdicts were inconsistent until Safire's post-trial motion. The Court held that the objection was waived because it was not made before the jury was discharged. *Id*. at 373-74.

We reach the same conclusion here. HSCA waived any objection based on inconsistent verdicts when it did not object before the jury was discharged. ***Douglass***, 712 S.W.2d at 374; *see also **Edna Enters., Inc. v. Spirco Env't, Inc.***, 853 S.W.2d 388, 391 (Mo. App. 1993) ("Edna stood by and permitted the trial court to accept the verdicts and to discharge the jury. By failing to object until after the jury was dismissed, when it was too late to remedy any possible inconsistency, the parties have waived any right to challenge the entry of judgment based upon the verdicts").

HSCA argues that it did seek JNOV based on inconsistent verdicts in its post-trial motion for relief. That argument lacks merit for two reasons. First, we have examined HSCA's JNOV motion, and it does not seek the relief of JNOV based on inconsistent verdicts. Second, even if HSCA had done so, the objection was still waived because it was not raised before the jury was discharged. ***Douglass***, 712 S.W.2d at 374; *see **City of Independence for Use of Briggs v. Kerr Constr. Paving Co.***, 957 S.W.2d 315, 319-20 (Mo. App. 1997) (raising the matter of inconsistent verdicts in a post-trial motion is too late); *see also **Teschner v. Physicians Radiology***, 761 S.W.2d 665, 667 (Mo. App. 1988) ("*Douglass*

9

no longer allows a party to seek a new trial based upon inconsistent verdicts without having first objected to the verdicts before the jury is discharged").[7]

Moreover, the trial court lacked authority to *sua sponte* enter judgment for HSCA based on inconsistent verdicts when HSCA raised no objection before discharge of the jury. "*Douglass* relegates to the litigant, not to the trial court, the obligation to protect his interest in a verdict by timely objection." **Wilferth v. Pruett**, 854 S.W.2d 625, 627 (Mo. App. 1993) (rejecting argument that the trial court erred in failing to *sua sponte* find that the verdicts were inconsistent); **Jorgensen v. City of Kansas City**, 725 S.W.2d 98, 104 (Mo. App. 1987) (similar holding and further noting that "in the absence of objection before the discharge of the jury, an inconsistent and self-destructive verdict will sustain a judgment"); *see also* **Foreman v. AO Smith Corp.**, 477 S.W.3d 649, 657 (Mo. App. 2015) ("verdict was inconsistent, but not illegal"; citing **Douglass** and holding that "Appellant had every opportunity to object to the verdicts before the jury was discharged and failed to do so … we consider this claim waived").

Thus, because HSCA did not object before discharge of the jury, any claim of inconsistency was waived, and the trial court erred by entering JNOV as to Verdict C based upon any purported inconsistency. Point 1 is granted.

---

[7] We reject HSCA's argument that this case falls into an exception to the objection requirement in **Douglass** because this case involves a derivative claim, where one party's claim fails as a matter of law if a jury rejects the co-defendant's underlying claim. *See, e.g.*, **Burnett v. Griffith**, 739 S.W.2d 712, 713-14 (Mo. banc 1987) (involving *respondeat superior* where an employer is liable only if employee is found liable); **Teschner**, 761 S.W.2d at 667 ("plaintiff's right to recover for loss of consortium of his spouse is derivative only, so that if the spouse has no valid claim for personal injuries, plaintiff cannot recover special damages flowing therefrom"). The case at bar involved no derivative claim, no employer-employee claim, and no spousal claim. As more fully discussed in Point 2, this case instead involved separate defendants with separate theories of liability as to each.

Point 2 contends the trial court erred in entering JNOV for HSCA because the verdicts actually were consistent. The following facts are relevant to this point.

The Design Guidelines prohibit reflective finishes in Section 2.20, which provides:

No Reflective Finishes. No highly reflective finishes shall be used on exterior surfaces.

The verdict-directing instructions for both Verdicts C and D refer to Section 2.20. Verdict C, for "breach of the Design Guidelines against [HSCA,]" was predicated on Instruction No. 18. That instruction directed the jury to find for the Morelocks and against HSCA if the jury first believed that HSCA "did not require [the Coryells] to comply with Section 2.20":

**INSTRUCTION NO. 18**

Your verdict must be for plaintiffs Wayne and Kathy Morelock if you believe:

First, defendant **Highland Springs did not require Samuel and Jennifer Coryell to comply with Section 2.20** of the Design Guidelines, and

Second, because of such failure, defendant Highland Springs's Design Guidelines obligations were not performed, and

Third, plaintiffs Wayne and Kathy Morelock were thereby damaged.

(Emphasis added.)

Verdict D, on the other hand, for "breach of the Design Guidelines against [the Coryells,]" was predicated on Instruction No. 23. That instruction directed the jury to find for the Morelocks and against the Coryells if the jury first believed that the Coryells "did not comply with Section 2.20":

**INSTRUCTION NO. 23**

Your verdict must be for plaintiffs Wayne and Kathy Morelock if you believe:

11

First, defendants Samuel and Jennifer Coryell **did not comply with Section 2.20** of the Design Guidelines stating no highly reflective finishes shall be used on exterior surfaces, and

Second, because of such failure, defendants Samuel and Jennifer Coryell's Design Guidelines obligations were not performed, and

Third, plaintiffs Wayne and Kathy Morelock were thereby damaged.

(Emphasis added.)

In the Amended Judgment, the trial court stated that Verdicts C and D were inconsistent with respect to Section 2.20:

The jury cannot find compliance under Section 2.20 for the Coryell roof on the claims against the Coryells but also find a lack of compliance under Section 2.20 for the same Coryell roof on the claims against HSCA. That is what occurred with the jury in this matter through their findings on Verdicts C and D. These verdicts are wholly inconsistent and shall not stand.

In Point 2, the Morelocks contend the verdicts were consistent because "the liability of [HSCA] in Verdict C was not premised upon the conduct of the Coryells." Again, we agree.

The Amended Judgment suggests the trial court thought the first element of the breach-of-contract instruction against HSCA was identical to the first element of the breach-of-contract instruction against the Coryells. That is simply not true. The first element of the HSCA instruction required the jury to decide whether HSCA did not require the Coryells to comply with Section 2.20. The first element of the Coryell instruction, on the other hand, required the jury to decide whether the Coryells installed the Roof in violation of Section 2.20.

These instructions were consistent with the Coryells' arguments and evidence throughout the case that their conduct with respect to the Roof installation occurred with the explicit knowledge and approval of HSCA. This included evidence of binding

determinations by HSCA that the Roof complied with the Design Guidelines. Based on this evidence, the Coryells argued that HSCA was ultimately responsible for any issue with the Roof. If the jury accepted this argument, it would find (as it did) that HSCA was liable for breach of the Design Guidelines, but that the Coryells were not liable since HSCA permitted all of the Coryells' actions in connection with the Roof. Based on the parties' theories at trial, a reasonable jury could have found against HSCA and for the Coryells based on the differing evidence, and these verdicts were not inconsistent.

Thus, the liability of HSCA in Verdict C was not premised upon the conduct of the Coryells. Because Verdicts C and D were consistent, the trial court erred in granting JNOV. Point 2 is granted.

*Point 3*

Plaintiffs' third point contends the trial court erred by denying Plaintiffs' motion to amend the judgment to award attorney's fees and costs in connection with the boundary-line change set out in Count 7. In reviewing the trial court's denial of a motion to amend the judgment, "we will not reverse the trial court unless it abused its discretion." *Heckadon v. CFS Enters., Inc.*, 400 S.W.3d 372, 380 (Mo. App. 2013) (citation omitted); *Williams v. City of Kansas City*, 641 S.W.3d 302, 332 (Mo. App. 2021). A trial court abuses its discretion when its ruling shocks the sense of justice, shows a lack of consideration, and is obviously against the logic of the circumstances. *Heckadon*, 400 S.W.3d at 380. The following facts are relevant to this point.

As mentioned previously, the Coryells purchased their property from MFLP pursuant to the PSA, which was admitted in evidence. The PSA included a "Special Agreement" anticipating an eight-foot boundary-line change to be reflected in the legal description of

13

each property (hereinafter referred to as the special agreement).[8] Plaintiffs wanted to move the parties' boundary line approximately eight feet so they would not have to relocate existing landscaping, a sprinkler system, and invisible fencing. Plaintiffs would not have sold the Coryell property absent the special agreement and ultimately accepted a reduced purchase price based on the Coryells' willingness to move the boundary line. The special agreement was reached before the parties entered into a contract, and it contemplated finalization of the boundary-line change post-closing.

The PSA also included a provision for "reasonable attorney's fees and costs from the defaulting party":

> Section 5.03 Attorney's Fees. If either party defaults under this Agreement, and the non-defaulting party employs an attorney to enforce the terms hereof, such non-defaulting party shall be entitled to **reasonable attorney's fees and costs** from the defaulting party.

(Emphasis added.)

Plaintiffs and the Coryells each had a claim related to the boundary-line change. Both claims requested the trial court to determine the legal boundary line between the properties.[9] The Coryells dismissed without prejudice their boundary-line claim one week before trial, after the claim had been pending for over three years. Plaintiffs continued to pursue their Count 7 to enforce the special agreement, which had since resulted in a "Final Replat" reflecting the "true and correct boundaries and legal descriptions of the Morelock property

---

[8] The special agreement specified that "[t]he parties hereto acknowledge and agree that the terms and conditions set forth on **Exhibit "A"**, attached hereto and incorporated herein by this reference, shall be an integral part of this Agreement" (emphasis in original). Exhibit A then stated the following: "Lot boundary to be changed per drawing by Anderson Engineering with new boundaries being mutually agreeable between Buyers and Seller."

[9] The Coryells' claim requested a declaratory judgment stating that the legal description of Plaintiffs' property "does not include any portion" of the Coryells' property.

14

and the Coryell property" (Final Replat). Plaintiffs' Count 7 specifically prayed the court to: (1) quiet title in the Morelocks in accord with the Final Replat; and (2) order the Coryells to execute the Final Replat.

At trial, Samuel Coryell admitted being a party to the PSA and to emails indicating he agreed that the boundary-line change would occur post-closing. He also admitted that this change required the parties to sign the Final Replat and complete paperwork to obtain corrected deeds to their respective properties. Although there were no issues of fact with respect to the boundary-line change, Samuel Coryell testified that the trial court should decide the issue.

Before Plaintiffs' motion for directed verdict was argued, Plaintiffs' counsel moved to conform the pleadings with the evidence concerning the boundary-line change. Plaintiffs' counsel noted that the PSA was already in evidence and then stated:

> [Plaintiffs' counsel]: So, Your Honor, to be clear, we're claiming it is a breach of the Purchase and Sale Agreement, and we have talked about, you know, the special agreement language in there in Exhibit A, and so we are claiming a breach of contract related to the boundary dispute. … [The pleadings] refer to the deed, the preliminary replat, and the final replat, and then we've put the contract into evidence. And, of course, you know, part of that claim is the breach of contractual agreement to do it after the deed was issued. The contract requires them to do all those things to move the lot line and agree that it will be set by Anderson, and so we move to conform my pleading to the evidence in those admitted exhibits.

The trial court granted the motion.

After discharge of the jury, the Coryells' counsel stated in open court that the Coryells would sign off on the boundary-line change requested by Plaintiffs in their Count 7. On this count in the Judgment, the trial court recognized that, "the Coryells stipulated that they would sign an amended plat prepared by the Morelocks to move the boundary line" between the

15

properties.  The court ordered the Coryells to "execute all documents necessary to facilitate" the boundary-line change.

Thereafter, Plaintiffs filed their motion to amend the judgment to award MFLP reasonable attorney's fees and costs, pursuant to the PSA, in connection with their Count 7. Plaintiffs argued that the Coryells defaulted on the PSA by failing to execute the Final Replat and other necessary paperwork.  In the Amended Judgment, the trial court omitted its previous ruling on Count 7 that required the Coryells to execute all documents necessary to facilitate the change in the boundary line, as stipulated at trial.  The court also denied Plaintiffs' motion to amend without explanation.

On appeal, Plaintiffs argue that, while the trial court correctly ordered the Coryells to perform all acts necessary to effectuate the boundary-line change, the court abused its discretion in failing to amend the judgment to award reasonable attorney's fees and costs in connection with that boundary-line change.  Point 3 contends the trial court abused its discretion "because the trial court had to award attorney's fees and costs under the [PSA.]" According to Plaintiffs, the Coryells defaulted on the PSA and "forced" Plaintiffs to take their claim to trial when the Coryells:  (1) "dismissed their counterclaim about the boundary dispute one week before trial"; and (2) "conceded liability when they agreed" to affect "the boundary change requested by [Plaintiffs in their Count 7] after the jury was discharged." We agree.

It is well settled that "when a claim for attorney's fees is based on a contract provision allowing the prevailing party to recover fees, the trial court must comply with the terms of the contract and award attorney's fees to the prevailing party." *Clark v. Kinsey*, 558 S.W.3d 573, 579 (Mo. App. 2018); *Parkway Constr. Servs., Inc. v. Blackline LLC*, 573 S.W.3d 652, 666 (Mo. App. 2019); *see Magna Bank of Madison Cnty. v. W.P. Foods, Inc.*, 926 S.W.2d

16

157, 162-63 (Mo. App. 1996); *Jackes-Evans Mfg. Co. v. Christen*, 848 S.W.2d 553, 557 (Mo. App. 1993). "Although the trial court may use its discretion to determine the *amount* to award in attorney fees, where a party is found to have breached the contract, the contractual provision for attorney fees requires the award of attorney fees." *Mihlfeld & Assocs., Inc. v. Bishop & Bishop, L.L.C.*, 295 S.W.3d 163, 174 (Mo. App. 2009) (emphasis added); *see, e.g., Hills v. Greenfield Vill. Homes Ass'n, Inc.*, 956 S.W.2d 344, 350 (Mo. App. 1997) (because the home association agreement "provides for the payment of attorney's fees in the event suit was filed by respondent to collect delinquent assessments, it was an abuse of discretion for the trial court not to have awarded it a reasonable amount for attorney's fees").

Here, the trial court abused its discretion by denying Plaintiffs' motion to amend the judgment to provide for an award of reasonable attorney's fees and costs to MFLP in connection with the boundary-line change, pursuant to the PSA. There is no dispute the PSA was enforceable and that the Coryells did not comply with its terms. Specifically, the Coryells failed to execute the Final Replat and related paperwork to effectuate the boundary-line change as agreed. Further: (1) the Coryells filed a counterclaim seeking a declaration of the boundary line between the parties, before dismissing the counterclaim without prejudice over three years later, just one week before trial; (2) Samuel Coryell admitted at trial to being a party to the PSA, and to emails indicating an agreement that the boundary-line change would occur post-closing and require the parties to execute additional paperwork; and (3) the Coryells conceded liability on Plaintiffs' Count 7 when the Coryells indicated in open court after the jury was discharged that they would execute the Final Replat to affect the boundary-line change, to which the parties had agreed in the PSA.

17

For all these reasons, the trial court abused its discretion in failing to award MFLP attorney's fees and costs in connection with the boundary-line change.[10]  "Trial courts are considered experts on the topic of awarding attorney fees." *Kansas City Live Block 139 Retail, LLC v. Fran's K.C. Ltd*, 504 S.W.3d 725, 737 (Mo. App. 2016).  Accordingly, we remand for the trial court to conduct further proceedings to determine and award reasonable attorney's fees and costs owed by the Coryells to MFLP in connection with the boundary-line change pursuant to Plaintiffs' Count 7.  Point 3 is granted.

*Point 4*

Plaintiffs' fourth point contends the trial court erred in denying Plaintiffs' motion to amend the judgment to order that the Coryells bear their own costs at trial.  Once again, our review is for abuse of discretion.  *See Heckadon*, 400 S.W.3d at 380 (a trial court "abuses its discretion when its ruling shocks the sense of justice, shows a lack of consideration, and is obviously against the logic of the circumstances").

Point 4 contends the trial court abused its discretion "in denying [Plaintiffs'] motion to amend the judgment to provide that the Coryells should bear their own costs, because under … Sec. 514.090 the trial court has discretion as to a cost award when a party prevails on less than all claims, in that the Coryells did not prevail on [Count 7.]"  Because Plaintiffs

_____

[10]  The Coryells argue that the trial court did not err in denying fees because the MFLP was the only plaintiff that was a party to the PSA.  According to the Coryells, only Wayne and Kathy Morelock individually – "strangers to the PSA" – received relief, so they could not claim the benefit of the fee provision in the PSA.  That argument lacks merit.  MFLP, a signatory to the PSA, was the prevailing party on the breach of contract theory involving the boundary-line issue.  *See AEFC, Inc. v. Vietti*, 615 S.W.3d 90, 95 (Mo. App. 2020).  Therefore, MFLP was entitled to an award of attorney's fees and costs.  On remand, the trial court has been directed to award attorney's fees and costs only to MFLP.  The fact that the Morelocks joined in that request is irrelevant because they are not receiving any of portion of the award.

failed to show that the trial court abused its discretion in allocating costs, there is no merit in this point.

Section 514.090 provides:

> Where there are several counts in any petition, and any one of them be adjudged insufficient, or a verdict, or any issue joined thereon, shall be found for the defendant, costs shall be awarded at the discretion of the court.

*Id*. "This statute affords the trial court discretion to apportion an award of costs in favor of a defendant who prevails on some but not all claims asserted by a plaintiff." ***Riggs v. State Dep't of Soc. Servs.***, 473 S.W.3d 177, 183 (Mo. App. 2015). Such discretion requires that the award of costs "bear some relationship to the judgments upon all of the issues and *the principle issue litigated*[,]" but it does not require that costs be apportioned on a claim-by-claim basis. *See* ***Kopp v. Franks***, 792 S.W.2d 413, 423 (Mo. App. 1990) (emphasis added).

In this case, the principle issue litigated was whether the Roof installed by the Coryells on their home constituted a nuisance or breach of contract by the Coryells pursuant to the Design Guidelines. On those issues, the Coryells prevailed. The trial court's allocation of the Coryells' costs at trial to Plaintiffs, and the court's subsequent refusal to order the Coryells to bear their own costs at trial, does not shock our sense of justice or show a lack of consideration, and the ruling is not "obviously against the logic of the circumstances." *See* ***Heckadon***, 400 S.W.3d at 380 (citation omitted); ***Williams***, 641 S.W.3d at 332. Because the trial court did not abuse its discretion in ruling on this issue, Point 4 is denied.

## Conclusion

For the foregoing reasons, the Amended Judgment is vacated with respect to the entry of JNOV and the denial of attorney's fees and costs in connection with the boundary-line change. We remand with directions for the trial court to: (1) enter a second amended

19

judgment, in accordance with Verdict C, finding in favor of the Morelocks and against HSCA and awarding the Morelocks $500,000 in property damages; (2) order the Coryells to execute all documents necessary to facilitate the change in the boundary line; and (3) conduct further proceedings for the purpose of awarding reasonable attorney's fees and costs to MFLP with respect to the boundary-line change in Plaintiffs' Count 7.  In all other respects the Amended Judgment is affirmed.

JEFFREY W. BATES, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCUR

JENNIFER R. GROWCOCK, J. – CONCUR